# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 17, 2013

## RUSSELL LENOX HAMBLIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2007B1043     Steve Dozier, Judge**

**No. M2012-01649-CCA-R3-PC - Filed September 26, 2013**

Petitioner, Russell Lenox Hamblin, appeals from the trial court's dismissal of his petition for post-conviction relief following on evidentiary hearing.  Petitioner asserts that his trial counsel and his appellate counsel (separate attorneys) rendered ineffective assistance of counsel.  After a review of the record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, Jr. and ROBERT W. WEDEMEYER, JJ., joined.

Nathaniel Colburn, Nashville, Tennessee, for the appellant, Russell Lenox Hamblin.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions and sentences of Petitioner which are the subject of his post-conviction proceeding, and the facts leading to those convictions are summarized in this court's opinion in Petitioner's direct appeal, as set forth below wherein Petitioner is referred to as "the defendant."

> The defendant, Russell Lenox Hamblin, was convicted of three counts of aggravated robbery and sentenced to ten years for each of the first two convictions and to twelve years for the third conviction.  All the sentences were ordered to run consecutively, for a total effective sentence of thirty-two years.  On appeal, he argues that: the evidence was insufficient

to support his convictions; the trial court erred in admitting evidence of the sale and purchase of automobiles; the trial court abused its discretion in allowing his credibility to be impeached; and he was improperly sentenced. After careful review, we affirm the judgments from the trial court.

The defendant was convicted of the aggravated robbery of a Chinese restaurant and a nail salon in Nashville. On December 26, 2006, the victims, Mr. and Mrs. Choy, the owners of the restaurant, were working alone. There were no customers in the restaurant when the defendant entered the establishment to pick up an order that cost two dollars. The defendant left but immediately returned and asked for some hot sauce. Mr. Choy went into the kitchen to get some hot sauce while the defendant went into the restroom. The defendant sprayed Ms. Choy in the eye and entered the kitchen where he then sprayed Mr. Choy. Another man, Sedric Holt, entered the restaurant, pointed a gun at Mrs. Choy, and told Mr. Choy to lie on the floor. The defendant and Holt opened the cash register and removed all the money. The defendant was described by Mr. Choy as "the little one." The defendant asked if there was a safe or camera in the restaurant, and Mr. Choy told him that they had neither. The defendant instructed Holt to search the victim's pockets, where they found $4300 from Mr. Choy and $100 from Mrs. Choy. One of the robbers took Mrs. Choy's purse, and Holt took Mr. Choy's wallet and car keys.

After the robbers left, Mr. Choy went to the liquor store next door to call 9-1-1, because the robbers had taken the cord to the restaurant's phone. At that time, Mr. Choy noticed that his wife's car was gone. Mrs. Choy was in charge of making the deposits for the restaurant. Because she was working longer hours and was caring for a sick family member, Mrs. Choy did not make regular deposits from Thanksgiving through Christmas and, instead, kept the deposits in the trunk of her car. The victims did not know how much money was in the car when it was taken after the robbery.

Mr. Choy was taken to the hospital by ambulance because of the pepper spray in his eyes. After he showered that evening, he was again burned because the pepper spray in his hair ran into his eyes. He was unable to identify either of the robbers in the first photographic lineup but identified Holt in the second photographic lineup.

Eric Holt, a cousin of Sedric Holt, testified that he saw the defendant and Holt remove some bags from a green Honda automobile that he had not seen prior to the night of the robbery. He watched them remove the

contents of the bags, which included money, credit cards, identification cards, and pictures of Asian-American children. He testified that the men threw the pictures and identification cards into a dumpster outside of the apartment. He said the total amount of money was $17,557. Eric Holt testified that the defendant and his cousin, Sedric, went shopping at the Hickory Hollow Mall and purchased clothes, an engagement ring for the defendant's girlfriend, and a truck with the money. The defendant bought some items for Eric, but he returned them because he was not a part of their gang.

Eric borrowed the green Honda from Sedric Holt. When he returned the car, Sedric informed him that it was stolen. Eric was upset because he knew his fingerprints were in the car and he did not want to go to jail. After his fingerprints were discovered in the car, Eric was questioned at school by a detective. Eric told the police about the defendant.

The victims recovered the Honda on the evening of January 3, 2007, after it had been found by the police. Their daughter noticed there was a cellular telephone in the car and knew that her parents did not own a cellular telephone. She went through the phone and observed that it belonged to someone involved in the robbery.

Sedric Holt testified that he was eighteen years of age in 2006. He testified that he met the defendant in 2006. The defendant started dating his sister after Thanksgiving that year. He testified that, in November 2006, the defendant began saying they were a crime boss family and got a tattoo on his hands that said "Crime boss." His sister got a "CBF" tattoo. On December 26, 2006, Holt was riding with the defendant when they stopped at the House of Choy restaurant. He testified that he had taken some Ecstasy pills and smoked marijuana laced with cocaine two hours earlier. He put a gun in his pocket and walked into the restaurant with the defendant. The defendant ordered food and went to the restroom before spraying Mrs. Choy with mace.

Sedric Holt said he drew his gun and aimed it at Mr. Choy while ordering him to show his hands. After he watched the defendant spray mace in Mr. Choy's face, Holt looked for money. The victims told them that they did not have any money in the restaurant. The defendant told them that he did not want to hurt them; he only wanted money. Sedric Holt took a $100 bill from Mrs. Choy and the money in her pocket. The defendant told him to take the victim's keys, and he complied. When they left the victim's

restaurant, the defendant told him to take Mrs. Choy's car. They sorted the stolen goods and determined that they had taken approximately seventeen thousand dollars. The defendant later made a down payment on a black Aztec truck with some of the money.

On the evening of January 12, 2007, Andy Dao, another victim, was working in his father's nail salon on Donelson Pike when two people, later identified as the defendant's girlfriend and Sedric Holt, entered the store. The defendant's girlfriend received a manicure while Sedric Holt paced in and out of the store. When the manicure was complete, Sedric Holt paid for the service. The victim heard her ask Holt, "Are you actually going to pay for this?" After they exited, Holt walked back inside and asked the victim for change for a ten-dollar bill. When the victim bent down to take out ten one-dollar bills, Holt displayed a gun and said, "stick it up." Holt then took a can of mace from his pocket and sprayed the victim. The victim was able to turn away to avoid the spray in the face. Holt took the store's money envelope which contained approximately five hundred dollars.

An eyewitness in the store testified that the defendant was not the man who robbed the store but did positively identify the defendant's girlfriend and his car. Holt testified that the defendant was driving the car, and both men were identified in a surveillance video from a neighboring restaurant.

*State v. Russell Lenox Hamblin*, No. M2008-02511-CCA-R3-CD, 2010 WL 4296674, at *1-3 (Tenn. Crim. App., Oct. 29, 2010), *perm. app. denied* (Tenn., March 10, 2011).

In this appeal from the denial of post-conviction relief, Petitioner asserts the following specific examples of ineffective assistance of trial counsel and appellate counsel.

*Trial Counsel*

(1)     Trial counsel made trial strategic plans and engaged in witness questioning in front of the jury based upon a transcript of a witness's statement to police which had errors in it. These errors directly contradicted what was in the audio-video recording of that witness's statement.

(2)     Trial counsel failed to move for a mistrial when the errors in the transcript of the witness's statement were revealed during the trial.

(3)     Trial counsel failed to offer an alibi defense at trial.

-4-

(4)     Trial counsel failed to adequately consult with Petitioner prior to and during the trial.

*Appellate Counsel*

(1)     Appellate counsel never met with Petitioner "face to face," even though he did converse with appellate counsel by phone.

(2)     Appellate counsel caused "the issue of the admission of the bills of sale for a Lincoln Town Car and an Aztec to be waived."

(3)     Appellate counsel rendered ineffective assistance of counsel because he "never informed [Petitioner] of the Court of Criminal Appeals' decision in the case, and never sent him any correspondence regarding same."

The only witnesses who testified at the post-conviction hearing were Petitioner, his trial counsel, and his appellate counsel. We will summarize their testimony that relates to the specific issues raised by Petitioner in this appeal.

Petitioner testified that trial counsel only met with him approximately three times prior to trial and that "we never even had a trial strategy discussion." Petitioner stated that he wanted trial counsel to "investigate Eric Holt," a cousin to two of Petitioner's co-defendants, Sedric Holt and Davida Holt. He also wanted trial counsel to investigate the involvement of a person named Quintez Williams, whose fingerprints were supposedly found at one of the crime scenes. Petitioner wanted trial counsel to discuss matters with Davida Holt, one of his co-defendants.

Trial counsel had a secretary in his office prepare a transcript of the audio visual tape recording of co-defendant Sedric Holt's statement to police. The transcript stated that Mr. Holt admitted that it was his (Mr. Holt's) idea to rob the House of Choy. During the trial, a police detective testified that the recording showed that Sedric Holt actually indicated that it was Petitioner's idea to rob the House of Choy. Petitioner testified that trial counsel's reliance upon the transcript was such a glaring error that it irreparably damaged trial counsel's credibility with the jury and ultimately prejudiced Petitioner. Petitioner testified that trial counsel was "nervous" and "shocked" and trial counsel "said he prepared his whole case off of faulty transcripts." Petitioner acknowledged that trial counsel said that he wanted to "fix" the problem caused by the faulty transcript.

Regarding his contention that trial counsel failed to offer a valid alibi defense, Petitioner testified that, "I let [trial counsel] know I was selling drugs out there." At one

point Petitioner testified that his first discussion about details of an alibi defense with trial counsel was *during* the trial, just prior to Petitioner's testimony at trial. During his direct testimony at the post-conviction hearing, Petitioner never identified his alibi witness(es). On cross-examination, Petitioner testified that Davida Holt, who was at that time his girlfriend, was his proposed alibi witness (in addition to being a co-defendant) on the cases. Petitioner testified that he and Ms. Holt were "making drug transactions stuff of that nature" at the time of the offenses.

Regarding the efforts of appellate counsel, Petitioner testified that he never met with appellate counsel, but he spoke with appellate counsel by telephone "a few times." Petitioner testified that appellate counsel failed to properly brief an issue which the appellate court ultimately determined was waived on appeal.

On cross-examination Petitioner indicated he had spoken to trial counsel months before trial about Davida Holt being his alibi witness, but then when asked to clarify the details of the pre-trial conversation Petitioner testified, "[Trial counsel] asked me where was I the night in fact, I said I was selling drugs."

As to the issue of appellate counsel allowing an issue to be waived for failing to properly brief it, Petitioner gave confusing testimony. The evidence at issue was documentation regarding purchase and ownership of a Lincoln automobile and an "Aztec." Petitioner's testimony at the post-conviction hearing indicated he wanted the evidence to be admitted at trial, it was not admitted, and he wanted this issue raised as error on appeal. However, review of this court's opinion on the direct appeal clearly shows that the documentation was admitted at trial, and on appeal Petitioner argued it was error by the trial court to not *exclude* the evidence. *Russell Lenox Hamblin*, 2010 WL 4296674, at *5.

Appellate counsel testified that he did not meet face to face with Petitioner during his representation on appeal, but he did talk to Petitioner several times by telephone. Appellate counsel said that one issue he focused on in the appeal was the lack of sufficient corroboration of the accomplice testimony. He also focused on the length of the effective sentence and evidence of a prior robbery conviction of Petitioner being admitted as impeachment evidence. Appellate counsel implicitly acknowledged that the vehicle documentation issue was not adequately briefed, but he stated that it was just "a minor issue" and appellate counsel argued it in "just a quick paragraph."

Trial counsel testified that he was appointed to represent Petitioner in June 2007 and the trial was held in May 2008. During that time period he met with Petitioner at the jail "more than five, less than 20" times. He also met numerous times with Petitioner on "discussion dates" in court. Trial counsel discussed the evidence, trial strategy, and the

punishment he was facing if convicted at trial in addition to the negotiated plea offer made by the State.

As to the defense trial strategy, trial counsel testified that no victim witness or disinterested witness ever identified Petitioner as being present at the crimes. Trial counsel testified "most of [the witnesses] were shown line ups with [Petitioner] in them, and they did not identify him." Trial counsel knew that co-defendant Sedric Holt and Sedric Holt's cousin, Eric Holt, were going to testify for the State. His strategy was to attack the credibility of these witnesses and urge the jury to not believe them but to instead believe the witnesses who could not identify Petitioner as one of the perpetrators. Trial counsel summarized the defense strategy as follows:

> Eight times, eight times the detectives said the name [of Petitioner] during this lengthy interview process, eight times they said it before [Sedric] Holt said it. So, you know, I tried to paint the picture as [Sedric] Holt, you know, as a drowning man, and he grabbed a rope the detectives gave him. And in fact, [they] offered it eight times. And other than he, and Eric Holt, nobody but nobody identified [Petitioner], no physical evidence tied him to the case.

> So my trial strategy was, don't believe these two guys, because their stories, they've got plenty of reason to lie and their stories are inconsistent with witness testimony and physical evidence.

Even though Petitioner denied his guilt in all the robberies (there were originally five robberies charged), Petitioner never told trial counsel that there were any witnesses who could provide an alibi defense.

Trial counsel testified that he had been practicing law for two years at the time of Petitioner's trial, and it was his first jury trial. However, he shared office space with several other attorneys who also practiced criminal defense law and he was able to seek their guidance, suggestions, and other help in his trial preparation for Petitioner's case.

Regarding the transcript of co-defendant Cedric Holt's statement to police, trial counsel testified that he was "stunned" when he found out during trial that there was an error in the transcript. He found out during Detective Thompson's testimony. After Detective Thompson's direct examination by the State, the court sent the jury to lunch. During this break in the trial, trial counsel learned that the attorney for co-defendant Sedric Holt had had a court reporter prepare an accurate transcript of the statement, and trial counsel was allowed to have an extra hour to prepare his cross-examination of Detective Thompson. Trial counsel

testified that it never occurred to him during the trial to request a mistrial based upon use of the transcript with the error.

Trial counsel was extensively cross-examined by Petitioner's counsel at the post-conviction hearing concerning the use of the faulty transcript. A portion of the trial transcript was admitted as an exhibit. This exhibit contained a portion of the testimony of Detective Thompson, specifically when he identified discrepancies between the faulty transcript utilized by the trial counsel during Sedric Holt's cross-examination, and the audio-visual record of Sedric Holt's statement. We have reviewed this exhibit and the only significant discrepancy which occurred is that on the faulty transcript Sedric Holt is shown as saying "it was mine" when asked by Detective Thompson whose idea it was to rob House of Choy - but on the audio-visual record, Sedric Holt said "it wasn't mine." Trial counsel acknowledged that when this discrepancy was exposed during the trial, he was concerned about his credibility with the jury. Trial counsel explained that in order to "fix" the problem, he went through the correct transcript and emphasized during his cross-examination of Detective Thompson all of the points favorable to Petitioner he had made with the correct portions of the "faulty" transcript.

The trial court took the matter under advisement and subsequently entered a detailed order which denied relief to Petitioner. As to trial counsel's use of a "faulty transcript" and his failure to request a mistrial when the faulty transcript was disclosed, the trial court stated,

> The Court has reviewed trial counsel's notes and the transcripts involved in this issue and they show minimal differences. The one highlighted at the post-conviction hearing involves whose idea it was to rob the House of Choy . . . . The Court does not find the error in the transcripts or the questions posed as a result so improper or egregious as to create a "manifest necessity" for declaring a mistrial.

The trial court also set forth the strong evidence showing Petitioner's guilt, and implicitly concluded that it really did not matter whose idea it was to rob House of Choy - both Petitioner and Sedric Holt were involved. Thus the trial court concluded that Petitioner failed to prove either deficient performance or prejudice by clear and convincing evidence.

Regarding trial counsel's failure to call Davida Holt as an alibi witness, the trial court noted that Davida Holt was not called as a witness at the post-conviction hearing to disclose what her purported alibi testimony would be, and also pointed out the difficulty of Ms. Holt being an alibi witness in one count and a participant in another count. The trial court concluded that Petitioner failed to prove this alleged ground for relief by clear and convincing evidence.

-8-

As to the allegations that trial counsel failed to adequately consult with Petitioner pre-trial and failed to develop a defense strategy, the trial court accredited the testimony of trial counsel. Specifically the trial court found that trial counsel discussed his trial strategy with Petitioner, employed a private investigator, and met with Petitioner on numerous occasions prior to trial.

As to the assertions of Petitioner that appellate counsel rendered ineffective assistance of counsel, the trial court addressed the alleged instances presented at the post-conviction hearing and stated,

> The petitioner alleges that appellate counsel was ineffective for failing to adequately consult with him during the appeal and his actions deprived him a meaningful review at the appellate level. The Court finds that the bills of sale for the Lincoln Town Car and the Aztec were admissible. At the hearing, the Petitioner acknowledged the basis for admission of the evidence. Therefore, the Court finds the petitioner has failed to prove this allegation by clear and convincing evidence.

## Analysis

In order to be granted post-conviction relief, a petitioner must prove the factual allegations supporting relief by clear and convincing evidence at an evidentiary hearing. Tenn. Code Ann. § 40-30-110(f); *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). The trial court's factual findings in its ruling in a post-conviction proceeding "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Appellate review of legal issues, or of mixed questions of fact and law, such as in a claim of ineffective assistance of counsel, is de novo with no presumption of correctness. *Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008). A petitioner must satisfy both prongs of the two-prong test to prove ineffective assistance of counsel which is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). These prongs are (1) deficient performance of counsel, defined as "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88, and (2) prejudice to the defendant, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dellinger*, 279 S.W.3d at 293. If the petitioner fails to establish either one of the prongs, that is a sufficient basis to deny relief, and the other prong does not need to be addressed. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). If a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to do an act such as call a witness, present tangible documents for evidence, and/or file a motion to suppress, among other actions, the petitioner is generally obliged to present the witness or the other evidence at the post-conviction hearing in order to satisfy the *Strickland* prejudice prong. *See Pylant*,

263 S.W.3d at 869. In other words, it is incumbent upon a petitioner to prove that what he says trial counsel *should have done* would have had merit and produced admissible, relevant evidence.

Additionally, as to allegations of ineffective assistance of appellate counsel, our supreme court stated in *Carpenter v. State*, 126 S.W.3d 879 (Tenn. 2004),

> Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. *King v. State,* 989 S.W.2d 319, 334 (Tenn. 1999); *Campbell v. State,* 904 S.W.2d 594, 596-97 (Tenn. 1995). Indeed, "experienced advocates have long 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" *Cooper v. State,* 849 S.W.2d 744, 747 (Tenn. 1993) (quoting *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)); *see also Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. *Jones,* 463 U.S. at 751, 103 S.Ct. 3308; *King,* 989 S.W.2d at 334; *Cooper,* 849 S.W.2d at 747. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference. *See Campbell,* 904 S.W.2d at 597; *see also Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight. *See Campbell,* 904 S.W.2d at 597; *see also Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases. *Campbell,* 904 S.W.2d at 597.
>
> If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, *then the reviewing court must determine the merits of the issue. See, e.g., Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. *See United States v. Dixon,* 1 F.3d 1080, 1083 (10th Cir. 1993).

*Carpenter*, 126 S.W.3d at 887 (emphasis added).

In order for the reviewing court to determine the merits of the omitted issue, a petitioner should present the previously omitted issue in the same form and with the same legal argument(s), that is, applying law to the facts of the case, which petitioner asserts appellate counsel should have done. It is not enough to simply state that appellate counsel should have raised certain issues on appeal and to argue that these issues could have resulted in relief being granted to the petitioner.

*Appellate Counsel*

We see no reason to treat an alleged deficient presentation of an issue on appeal (such as the waived issue in Petitioner's case) any differently than an omitted issue. In the case *sub judice* Petitioner's brief argues,

> [Appellate counsel] was also ineffective for causing the issue of the admission of the bills of sale for a Lincoln Town Car and an Aztec to be waived . . . . Specifically, [appellate counsel] failed to appropriately support the argument in his appellate brief by failing to cite the record in any way and the Court of Criminal Appeals deemed this important issue waived on appeal.

In both his brief to this court and in his presentation of evidence at the post-conviction hearing, Petitioner failed to set forth any argument, with citations to the trial record, that he asserts appellate counsel should have presented in the direct appeal. Petitioner also failed to present any evidence that appellate counsel's failure to communicate "face to face" with Petitioner rather than just by telephone was deficient representation or was prejudicial. Likewise, the assertion that appellate counsel never informed him of the decision of the Court of Criminal Appeals is not supported by the evidence. The record shows that appellate counsel timely filed a petition for permission to appeal to the Tennessee Supreme Court but that it was denied.

Petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel.

*Trial Counsel*

We have carefully reviewed the proof presented by Petitioner regarding his claims of ineffective assistance of counsel by trial counsel. We agree with the trial court that Petitioner is not entitled to relief on these grounds. Petitioner failed to present Davida Holt as a witness to show what, if anything, she would testify to in order to support an alibi defense. Thus,

Petitioner failed to prove the prejudice prong of *Strickland*. Likewise, Petitioner failed to present any substantial proof to show prejudice because of trial counsel's use of the transcript with errors in it, or to show prejudice by his failure to request a mistrial. There is no proof in the record that the trial court in the post-conviction case was wrong in its conclusion that no grounds existed to grant a mistrial. Finally, the trial court accredited the testimony of the trial counsel that he adequately consulted with Petitioner and that he adequately prepared for trial.

In conclusion, Petitioner has failed to show that he is entitled to relief in this appeal. The judgment of the trial court dismissing the post-conviction petition is affirmed.

_____
THOMAS T. WOODALL, JUDGE
